Paul BANKS, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 69 Civ. 4601.

United States District Court,
S. D. New York.

April 14, 1970.

Paul Banks, pro se.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, for the United States, by Thomas J. Fitzpatrick, Asst. U. S. Atty., New York City.

MANSFIELD, District Judge.

Petitioner, who is presently serving a 10-year sentence as a second narcotics offender, 26 U.S.C. § 7237(c), moves pursuant to 28 U.S.C. § 2255 to set aside his earlier narcotics conviction and sentence on the grounds (1) that his guilty plea was involuntary and made without an understanding of the charge or knowledge of its consequences; and (2) that the statutes under which he was convicted, 21 U.S.C. § 176a, 26 U.S.C. §§ 4742(a) and 4744(a), are unconstitutional.

On March 13, 1957, petitioner, who was represented by Samuel Altman, Esq., since deceased, pleaded guilty to all seven counts of an indictment filed in this court (No. 151–287/1956), charging unlawful sale, transfer and possession of marijuana under 21 U.S.C. § 176a, 26 U.S.C. §§ 4742(a) and 4744(a), and conspiracy, 18 U.S.C. § 371. He was thereupon sentenced by the late Judge Noonan to a mandatory minimum term of five years in prison, which he subsequently served.

On September 14, 1964, after having been found guilty by a jury on two counts of unlawful sales of heroin, petitioner was sentenced as a second narcotics offender, 26 U.S.C. § 7237(c), by Judge McLean of this court to a mandatory minimum term of 10 years on each count to run concurrently. On April 22, 1965, the latter conviction was affirmed

by the Second Circuit Court of Appeals and on October 11, 1965, certiorari was denied by the Supreme Court. From time to time thereafter petitioner unsuccessfully attempted to obtain a new trial or to set aside his 1964 conviction. See memoranda opinions of Judge McLean dated October 29, 1965, December 15, 1966, January 20, 1967, January 16, 1969, and January 31, 1969.

◼ Having thus apparently exhausted his attempts to upset the later conviction, petitioner, in October, 1969, filed his present petition pursuant to § 2255 seeking an order vacating and annulling his earlier conviction or in the alternative allowing him pursuant to Rule 32(d), F.R.C.P., to withdraw his plea to the earlier indictment. Although more than 12 years has elapsed since the earlier conviction and he has served in full the mandatory five-year sentence thereupon imposed, he now apparently hopes that if he is successful in annulling that conviction he will be able to vacate the sentence presently being served as a second narcotics offender and be eligible for re-sentencing as a first narcotics offender. Since he thus indirectly seeks to attack a sentence presently being served, he appears to have standing to invoke this court's jurisdiction pursuant to § 2255 and the petition may not be dismissed as a collateral attack upon a sentence already served. Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1958).

Turning to the first ground urged by petitioner—that his 1957 guilty plea was involuntary and made without an understanding of the charges asserted against him and the consequences of pleading guilty—his guilty plea would be valid and binding only if the court complied with Rule 11, F.R.C.P., as it existed at the time of the 1957 sentencing. In 1957 that rule provided in pertinent part that "The Court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." [1]

No particular pattern or ritual was prescribed to make the determination prescribed by Rule 11 as it then stood, United States v. Lester, 247 F.2d 496, 499 (2d Cir. 1957), but a certain minimum inquiry was essential. The district court was at least required to ascertain whether the defendant desired to plead guilty, did so voluntarily, and understood the nature of the charges and the range of possible punishment that could be imposed. United States v. Lester, 247 F.2d at 500 (and cases cited); United States v. Mack, 249 F.2d 421, 423 (7th Cir. 1957). Although the usual method of ascertaining the defendant's awareness of these matters has been through personal interrogation, the court was permitted in 1957 to satisfy itself through other sources, Halliday v. United States, 274 F.Supp. 737 (D. Mass.1967); (cf. the changes in the provisions of Rule 11 to require personal interrogation of the defendant, *supra* n. 1). However, the fact that defendant had counsel, as petitioner did when he made his plea, did not minimize the court's obligation to inquire. As was said in Fultz v. United States, 365 F.2d 404, 408 (6th Cir. 1966):

"The representation of a defendant by counsel when he entered a plea of guilty would not, in itself, fulfill the requirements of the rule that a guilty plea shall not be accepted without

1. As amended in 1966, Rule 11 now reads:
   "A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the

charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

first determining that it is made voluntarily with an understanding of the nature of the charge. United States v. Diggs, 304 F.2d 929 (C.A.6). It is the duty of a federal judge before accepting a plea of guilty to thoroughly investigate the circumstances under which it is made. United States v. Lester, 247 F.2d 496 (C.A.2)."

See also United States v. Lester, 247 F.2d 496 (2d Cir. 1957).

In the present case the stenographic transcript of the proceedings before Judge Noonan up to the point when petitioner's guilty plea was entered reveals the following:

"(Case called.)

MR. WALSH [Ass't U. S. Att'y]: The Government is ready, your Honor.

MR. SOLOMON [Counsel for other defendants]: Ready for disposition, sir.

MR. ALTMAN [Petitioner's counsel]: If your Honor please, I represent the defendant Paul Banks, the first defendant named in the indictment, and the defendant asks leave to withdraw his plea of not guilty heretofore entered and enter a plea of guilty.

THE CLERK: Paul Banks, indictment No. 151–287, date of December 7, 1956, you pleaded not guilty to the seven counts of this indictment.

Do you wish to change your plea to guilty?

DEFENDANT BANKS: Yes.

THE COURT: Do you waive the reading?

MR. ALTMAN: I waive the reading of the indictment, yes, your Honor.

THE COURT: You plead guilty to all counts, Mr. Banks?

DEFENDANT BANKS: Yes.

MR. ALTMAN: I might attract your Honor's attention to the fact that it is really only two counts, but the books feature of it—it is really only two counts.

MR. WALSH: If your Honor please, the government will be ready for sentence. Do you want to take the pleas of the other defendants first?

THE COURT: All right."

Except for the foregoing there was no questioning of the petitioner by the court and no other statement was made by anyone in the court's presence to indicate that petitioner's decision to plead was voluntary and with an understanding of the charges to which he was pleading guilty. Following the entry of guilty pleas by co-defendants, Judge Noonan and counsel for both sides attempted to establish a sentencing date. When petitioner's counsel objected to an indicated increase in bail bond, Judge Noonan suggested that he could sentence petitioner immediately, since the sentence was a mandatory five-year minimum on several of the counts. After conferring with counsel, petitioner did not object, and the court thereupon imposed a five-year prison sentence.

It is readily apparent from the foregoing record that there is no indication that the court, prior to accepting the petitioner's guilty plea, made any determination as to the voluntariness of petitioner's plea or his understanding of the nature of the various charges made against him or the scope of the punishment that might be imposed. From the colloquy that followed the entry of the plea and the fact that petitioner and his counsel consulted together with respect to the suggestion that a mandatory five-year sentence might be imposed immediately, we might infer that the defendant voluntarily submitted to the imposition of the sentence with knowledge that it would be a five-year term. By that time, however, he had already entered his plea and the record does not indicate that anyone asked him whether, once he learned the amount of the punishment that might be imposed, he desired to withdraw the plea. So far as

he was concerned, therefore, the die was cast. Furthermore, even if we accepted *arguendo* the thesis that his conduct after he had made the plea could establish that he had voluntarily given it with knowledge of the scope of the punishment, there is no evidence that the court made any determination that he understood the nature and extent of the charges asserted against him.

Viewing the transcript of the proceedings as a whole, the most that can be said is that the sentencing judge took for granted, probably because of petitioner's representation by counsel, later described as a person "who has a substantial record of integrity," that his attorney had made the essential determination as to voluntariness and understanding. The cases require more. The trial judge was required to make at least some minimal attempt, reflected in the record, to comply with Rule 11. The record in this case is similar to that described in Halliday v. United States, 380 F.2d 270, 272 (1st Cir. 1967), as follows:

> "We may concede that there was nothing to indicate that the defendant was not acting voluntarily and with full understanding. This did not satisfy the rule. The rule imposed a burden of inquiry. Julian v. United States, 6 Cir., 1956, 236 F.2d 155. Although the circumstances suggested no negative finding, they did not warrant an affirmative one."

■ Counterbalancing the judge's failure to inquire is what might be considered laches on petitioner's part. Twelve years elapsed between the entry of the guilty plea in 1957 and the institution of the present motion in 1969, during which time Banks served the five-year sentence and was convicted of a second crime, the sale of heroin, in 1964. However, the passage of time does not bar this motion or remedy a failure to comply with Rule 11. Cf. Halliday v. United States, *supra*, 380 F.2d at 272 (defendant convicted in 1954 was permitted to challenge that conviction for the first time in 1966).

■ In view of the court's failure to make the determination commanded by Rule 11 as it was phrased in 1957, petitioner is entitled to a hearing to determine whether the defendant acted voluntarily and understood the charges to which he pleaded guilty. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969) (per curiam); see also cases cited in footnotes 22, 23 of McCarthy v. United States, 394 U.S. 459, 468, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Should the Government fail to sustain its burden of proving voluntariness and understanding—and we note that both petitioner's counsel and Judge Noonan are deceased—petitioner must be afforded the opportunity to plead anew. In the latter event, if petitioner pleaded not guilty, further prosecution at this late date would probably be impossible. However, the first step is to determine whether the Government, as in *Halliday* (where the hearing was held 12 years later), can adduce sufficient evidence.

Accordingly, the petition is granted. A hearing will be held at 10:00 A.M. on May 5, 1970, in Room 518. The Government is directed to produce the petitioner in this district sufficiently in advance of the hearing date to enable him to consult with privately retained counsel, or if he be unable to afford counsel, to permit him to request assignment of counsel.

It is so ordered.